IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Susan Gail Chassereau, | ) | C/A No.: 1:14-4085-MGL-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| Carolyn W. Colvin, Acting | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This appeal from a denial of social security benefits is before the court for a Report and Recommendation ("Report") pursuant to Local Civ. Rule 73.02(B)(2)(a) (D.S.C.). Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3) to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Disability Insurance Benefits ("DIB"). The two issues before the court are whether the Commissioner's findings of fact are supported by substantial evidence and whether she applied the proper legal standards. For the reasons that follow, the undersigned recommends that the Commissioner's decision be affirmed.

I.      Relevant Background

        A.      Procedural History

On October 11, 2011, Plaintiff protectively filed an application for DIB in which she alleged her disability began on April 27, 2011. Tr. at 166, 250–56. Her application was denied initially and upon reconsideration. Tr. at 181–84, 188–89. On June 11, 2013, Plaintiff had a hearing before Administrative Law Judge ("ALJ") Nicole S. Forbes-

Schmitt. Tr. at 52– (Hr'g Tr.). The ALJ issued an unfavorable decision on June 28, 2013, finding that Plaintiff was not disabled within the meaning of the Act. Tr. at 34–51. Subsequently, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. Tr. at 1–7. Thereafter, Plaintiff brought this action seeking judicial review of the Commissioner's decision in a complaint filed on October 21, 2014. [ECF No. 1].

> B.    Plaintiff's Background and Medical History

> > 1.    Background

Plaintiff was 56 years old at the time of the hearing. Tr. at 56. She completed high school. *Id.* Her past relevant work ("PRW") was as a truck unloader and an administrative assistant. Tr. at 73. She alleges she has been unable to work since April 27, 2011. Tr. at 55.

> > 2.    Medical History

> > > a.    Evidence Presented to ALJ

Plaintiff presented to Mary Halbritter, PA-C ("Ms. Halbritter"), at Low Country Health Care System ("LCHCS") on May 25, 2010. Tr. at 370–72. She indicated her shoulder pain had improved after a recent injection. Tr. at 370. She reported no acute complaints and sought medication refills. *Id.* Ms. Halbritter refilled Plaintiff's medications and advised her to return in three months. Tr. at 371–72.

On August 20, 2010, Plaintiff presented to gastroenterologist John M. Crisologo ("Dr. Crisologo"). Tr. at 404–05. She complained of a recent onset of acid reflux and diarrhea, as well as worsened symptoms of Crohn's disease. Tr. at 404. Dr. Crisologo

prescribed Medrol Dosepak for a possible Crohn's flare and gave Plaintiff a sample of Asacol. Tr. at 405.

Plaintiff followed up with Ms. Halbritter on August 24, 2010, and reported a recent flare of Crohn's disease after being unable to obtain her medications. Tr. at 387. She indicated her Crohn's disease was again under control with the addition of a steroid taper and that her medications had arrived through a patient-assistance program. *Id.* Plaintiff stated her arm pain had improved after she received a steroid injection, but noted some increased anxiety. *Id.* Ms. Halbritter observed no abnormalities during a physical examination. Tr. at 388. She refilled Plaintiff's medications and instructed her to follow up in three months. *Id.*

Plaintiff presented to Dr. Crisologo on November 19, 2010, and reported worsened acid reflux and daily diarrhea. Tr. at 401. Dr. Crisologo observed no abnormalities on physical examination. Tr. at 402. He refilled Plaintiff's prescriptions and provided some medication samples. *Id.*

On November 23, 2010, Plaintiff presented to LCHCS for routine follow up and medication refills. Tr. at 383. She indicated her gastroenterologist had recently prescribed Prilosec for reflux and diarrhea, but stated she was otherwise doing well. *Id.* A physical examination was normal. Tr. at 384. Ms. Halbritter refilled her medications and instructed her to follow up in three months. Tr. at 384–85.

On January 21, 2011, Plaintiff reported to Dr. Crisologo that she randomly experienced loose bowel movements that were accompanied by abdominal pain. Tr. at

399. Dr. Crisologo prescribed a B12 injection and indicated he would hold off on changing Plaintiff's medications. Tr. at 400.

Plaintiff followed up with Ms. Halbritter on February 28, 2011, and complained of pain related to shoulder bursitis. Tr. at 379. A physical examination was normal. Tr. at 380. Ms. Halbritter prescribed Ultram for Plaintiff's shoulder pain, refilled her other medications, and instructed her to follow up in three months. Tr. at 381.

On April 19, 2011, Plaintiff presented to chiropractor Jane R. Scott, D.C., DACNB ("Dr. Scott"), with complaints of low back pain radiating to her lower extremities and neck pain radiating to her left arm and resulting in weakness. Tr. at 412. Dr. Scott conducted a physical examination and diagnosed chronic moderate cervical radiculitis, chronic sciatic neuritis, and headaches. *Id.* She performed chiropractic spinal manipulation therapy, physical therapy, and electric muscle stimulation. *Id.* She noted Plaintiff demonstrated hyperreflexia in her upper and lower extremities and had weakened grip strength in her left hand. Tr. at 413. She also observed Plaintiff to have palpable muscle spasms and reduced range of motion ("ROM") with complaints of pain in her cervical spine. *Id.* She recommended Plaintiff obtain magnetic resonance imagining ("MRI") and proceed with six-to-eight treatments before being reevaluated. *Id.*

On May 28, 2011, Plaintiff informed Ms. Halbritter that she had recently been denied Social Security benefits. Tr. at 376. Ms. Halbritter noted that Plaintiff felt she was unable to work in public because a job would worsen her anxiety and require that she drive alone. *Id.* Ms. Halbritter noted that Plaintiff had "been able to function fairly well over the last several months to a year without significant problems." *Id.* A physical

examination was normal. Tr. at 377. Ms. Halbritter refilled Plaintiff's medications and instructed her to return in three months. *Id.*

On June 8, 2011, an MRI of Plaintiff's lumbar spine showed degenerative disc disease at L5-S1, with a slight left paracentral bulge showing a small T2 signal focus at the posterior disc margin. Tr. at 374. The radiologist indicated "[t]his could conceivably represent a small annular tear" and recommended clinical correlation. *Id.* He indicated the MRI demonstrated no focal disc protrusion or obvious neural compromise. *Id.* An MRI of Plaintiff's cervical spine indicated mild degenerative disc disease with minimal disc bulging at C4-5 and C6-7, as well as a small peculiar asymmetric signal focus at the left ventral lateral margin of the thecal sac at the C3 level. Tr. at 431. The MRI indicated no obvious neural compromise or focal disc protrusion. *Id.*

Plaintiff returned to LCHCS for follow up on August 25, 2011, and her prescription for Klonopin was refilled. Tr. at 373.

Plaintiff followed up with Dr. Crisologo on October 14, 2011. Tr. at 397–98. Dr. Crisologo described Plaintiff's inflammatory bowel disease as mild and noted that it was stable. Tr. at 397. He noted no abnormalities on physical examination. Tr. at 398.

Plaintiff presented to LCHCS on October 26, 2011, for a B12 injection to treat malaise and fatigue. Tr. at 428. An examination was normal. *Id.*

On November 9, 2011, Dr. Scott completed an impairment questionnaire. Tr. at 414–19. She indicated she had treated Plaintiff twice a month from April 5, 2011, through November 3, 2011. Tr. at 414. She listed Plaintiff's diagnoses as chronic cervical neuritis associated with discogenic spondylosis and chronic sciatic neuritis associated

with spondylosis and a bulging disc. *Id.* Dr. Scott assessed Plaintiff's prognosis as "fair to poor." *Id.* She identified the following clinical findings to support her diagnoses: positive left shoulder depressor, indicating nerve irritation; painful, decreased ROM of the cervical spine; decreased grip strength in left hand; and positive straight-leg raise at 45 degrees, indicating sciatic nerve irritation. *Id.* She also indicated her diagnoses were supported by cervical and lumbar MRI. *Id.* Dr. Scott described Plaintiff's symptoms as chronic neck pain that radiated down the left arm and was accompanied by numbness, as well as chronic low back pain that radiated down the bilateral legs, but was worse on the left than on the right. *Id.* She indicated Plaintiff experienced daily pain that was exacerbated by simple activities of daily living and was complicated by Crohn's disease and anxiety disorder. Tr. at 415. She rated Plaintiff's pain as ranging from a seven to a nine and her fatigue as an eight on a 10-point scale. *Id.* She indicated Plaintiff was capable of sitting for an hour and standing and walking for less than an hour during an eight-hour workday in a competitive work environment. Tr. at 416. She recommended that Plaintiff not sit or stand continuously and suggested Plaintiff would need to move around for 15 minutes every hour. *Id.* She indicated Plaintiff could occasionally lift and carry 10 or few pounds, but could not lift over 10 pounds. *Id.* She indicated repeated lifting with her left upper extremity would exacerbate Plaintiff's condition. Tr. at 417. She assessed Plaintiff's ability to grasp, turn, and twist objects to be moderately limited on the right and markedly limited on the left. *Id.* She indicated Plaintiff had minimal limitation in using her right hand and fingers for fine manipulation, but moderate limitation in using her left hand and fingers for fine manipulation. *Id.* She indicated

6

Plaintiff had marked limitation in using her bilateral arms for reaching. *Id.* Dr. Scott indicated she did not prescribe any medications to Plaintiff, but had treated Plaintiff's impairments with spinal decompression, traction, electrical muscle stimulation, and myofascial release. *Id.* She indicated Plaintiff's symptoms would likely increase if she were placed in a competitive work environment and would interfere with her ability to keep her neck in a constant position. Tr. at 417–18. She indicated Plaintiff's pain was frequently severe enough to interfere with her attention and concentration, but did not prevent her from handling a low-stress work environment. Tr. at 418. She indicated Plaintiff would require a 15-minute break each hour and would likely be absent from work more than three times per month. Tr. at 418–19. She suggested Plaintiff would require ready access to a restroom and would need to avoid wetness, dust, heights, temperature extremes, noise, fumes, gases, stooping, pushing, pulling, kneeling, and bending. Tr. at 419. Dr. Scott indicated Plaintiff's symptoms and limitations were chronic and permanent. *Id.*

In a letter dated November 16, 2011, Dr. Scott indicated she had treated Plaintiff since April 5, 2011. Tr. at 411. She noted Plaintiff's chief complaints to be chronic neck pain radiating into her left arm, causing weakness in her left hand, and low back pain radiating into her lower extremity. *Id.* She indicated Plaintiff's condition was exacerbated by Crohn's disease, osteoarthritis of the spine, and bulging discs at L5-S1, C4-5, and C6-7. *Id.*

On November 17, 2011, state agency consultant Olin Hamrick, Ph. D. ("Dr. Hamrick"), completed a psychiatric review technique ("PRT"). Tr. at 157–58. He found

that Plaintiff had an anxiety-related disorder that resulted in mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. Tr. at 157. Dr. Hamrick also completed a mental residual functional capacity ("RFC") assessment. Tr. at 161. He indicated Plaintiff was not significantly limited with respect to the following mental abilities: to carry out very short and simple instructions; to carry out detailed instructions; to maintain attention and concentration for extended periods; to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; to sustain an ordinary routine without special supervision; to work in coordination with or in proximity to others without being distracted by them; to make simple work-related decisions; to ask simple questions or request assistance; to accept instructions and respond appropriately to criticism from supervisors; to maintain socially appropriate behavior; and to adhere to basic standards of neatness and cleanliness. Tr. at 161–62. He found that Plaintiff had moderate limitations in the following abilities: to complete a normal workday and workweek without interruptions from psychologically-based symptoms; to perform at a consistent pace without an unreasonable number and length of rest periods; to interact appropriately with the general public; and to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. *Id.*

On December 23, 2011, Plaintiff presented to Harriet Steinert, M.D. ("Dr. Steinert"), for an orthopedic examination. Tr. at 422–25. She reported a history of multiple episodes of pancreatitis, but stated her last episode occurred approximately a year earlier. Tr. at 424. She indicated she experienced daily panic attacks, headaches, and

pain in her neck, left arm, lumbar spine, legs, and feet. *Id.* She stated she frequently lost her balance and fell. *Id.* She estimated she could sit for 20 minutes and walk for 100 yards. *Id.* Dr. Steinert observed Plaintiff to be very pleasant and cooperative, but to have a flat affect. *Id.* She noted Plaintiff was able to get on and off the exam table without difficulty. *Id.* She observed Plaintiff to demonstrate full ROM of her cervical spine and to have no tenderness to palpation, swelling, deformity, or inflammation. Tr. at 425. She indicated Plaintiff had no tenderness and full ROM of all joints in all four extremities. *Id.* She observed Plaintiff to have no sensory or motor deficits or muscle atrophy in any of her extremities. *Id.* Plaintiff demonstrated normal and equal grip strength bilaterally. *Id.* She had normal and equal deep tendon reflexes and peripheral pulses. *Id.* Plaintiff was able to flex at the waist to 70 of a possible 90 degrees, could fully extend, and could engage in full lateral rotation. Tr. at 422, 425. Dr. Steinert observed no tenderness to palpation in Plaintiff's spine or paraspinous muscles. Tr. at 425. A straight-leg raise test was negative bilaterally. *Id.* Plaintiff was able to walk with a normal gait and without an assistive device. *Id.* She completed a heel-toe walk and a tandem walk without difficulty and was able to squat. *Id.* Dr. Steinert noted Plaintiff had frequent diarrhea and anxiety attacks and could not be in a closed room. *Id.* She provided diagnostic impressions of Crohn's disease, dyslipidemia, pancreatitis, degenerative disc disease of the cervical and lumbar spine, anxiety disorder with panic attacks, and claustrophobia. *Id.*

State agency medical consultant Mary Lang, M.D., completed a physical RFC assessment on December 29, 2011, and found Plaintiff to have the following limitations: occasionally lift and/or carry 50 pounds; frequently lift and/or carry 25 pounds; stand

and/or walk for about six hours in an eight-hour workday; sit for about six hours in an eight-hour workday; frequently climb ladders/ropes/scaffolds; frequently stoop, crouch, and crawl; and avoid even moderate exposure to hazards. Tr. at 158–60. Dr. Lang also recommended that Plaintiff have close access to a bathroom because of her history of Crohn's disease. Tr. at 160.

Plaintiff presented to gastroenterologist Richard P. Stewart ("Dr. Stewart"), on February 1, 2012. Tr. at 445. She reported bloating, flatulence, and loose stools. *Id.*

Plaintiff presented to LCHCS for medication refills on April 3, 2012. Tr. at 474. She reported doing well overall. *Id.*

On May 1, 2012, state agency consultant Judith Von, Ph. D. ("Dr. Von"), completed a PRT and reached the same conclusions that Dr. Hamrick reached in November 2011. *Compare* Tr. at 157–58, *with* Tr. at 171–72. Dr. Von indicated Plaintiff was not significantly limited with respect to most work-related mental abilities. Tr. at 175–76. However, she found that Plaintiff was moderately limited with respect to her abilities to carry out detailed instructions and to interact appropriately with the general public. Tr. at 176. She specified that Plaintiff was capable of simple, repetitive tasks, but was not recommended for work with the public. *Id.*

Plaintiff presented to Sanjay Kumar, M.D. ("Dr. Kumar"), for a vocational rehabilitation examination on May 11, 2012. Tr. at 435–39. Plaintiff complained of upper neck and low back pain, Crohn's disease, and pancreatitis. Tr. at 437. She reported being wobbly on her feet and having fallen two weeks earlier. *Id.* She complained of diarrhea that occurred "from time-to-time." *Id.* Dr. Kumar observed Plaintiff to have normal deep

tendon reflexes; normal motor strength in all extremities; normal flexion, extension, lateral flexion, and rotation of her cervical and lumbar spine; normal bilateral shoulder abduction, adduction, forward elevation, and internal and external rotation; normal elbow ROM; normal wrist ROM; normal flexion and extension in both knees; normal adduction, abduction, flexion, and internal and external rotation in her bilateral hips; normal dorsal and plantar flexion in her bilateral ankles; no swelling and normal grip strength in her bilateral hands; normal sensation; normal reflexes, and no gait disturbance. Tr. at 437–38. The only abnormalities that Dr. Kumar noted were a reduction from 90 to 70 degrees of flexion in Plaintiff's lumbar spine and straight-leg raise limited to 70 degrees bilaterally in the supine position. Tr. at 438. Dr. Kumar assessed the following impairments: pure hypercholesterolemia, regional enteritis of unspecified site, chronic pancreatitis, unspecified anxiety state, other specified acquired hypothyroidism, and lumbago. *Id.* He recommended Plaintiff continue her current medication regimen. Tr. at 438–39.

On May 29, 2012, state agency physician Isabella McCall, M.D., completed a physical RFC and assessed the same restrictions indicated by Dr. Lang in December 2011. *Compare* Tr. at 158–60, *with* Tr. at 173–75.

Plaintiff presented to Bobbie Ayers, M.D. ("Dr. Ayers"), at LCHCS on June 28, 2012, for a three-month follow up. Tr. at 471. Dr. Ayers prescribed Clonazepam one milligram and Vytorin 10-40 milligrams for anxiety, Zoloft 100 milligrams for depression, and Mucinex 1200 milligrams and Cipro 500 milligrams for acute sinusitis.

Tr. at 472. She continued Plaintiff's other prescriptions and instructed her to follow up in four months. *Id.*

Plaintiff followed up with Dr. Ayers on August 17, 2012, and complained of a 23-pound weight loss, increased thirst, and nocturia. Tr. at 469. Dr. Ayers reviewed Plaintiff's laboratory test results and diagnosed uncontrolled type II diabetes mellitus. Tr. at 470. She prescribed Metformin HCl 500 milligrams and Glucotrol XL five milligrams. *Id.*

Plaintiff presented to Kerin McCormack, PA, ("Ms. McCormack"), at LCHCS for a well examination on August 29, 2012. Tr. at 465. Ms. McCormack observed Plaintiff to be in no acute distress; to walk with a normal gait; to have full ROM of her neck; to demonstrate normal movements without pain; and to have normal mood and affect. Tr. at 466.

Plaintiff presented to Ms. McCormack for follow up on November 12, 2012. Tr. at 456. Ms. McCormack noted she was treating Plaintiff for diabetes, hypothyroidism, and depression/anxiety and that Plaintiff had no acute complaints. *Id.* A physical examination was normal, and Ms. McCormack noted that Plaintiff had normal mood and affect and moved without pain. Tr. at 457. She prescribed one milligram of Clonazepam, to be taken twice daily for anxiety, and 500 milligrams of Metformin HCl, to be taken once daily. *Id.*

Plaintiff followed up with Dr. Stewart on April 25, 2013, and reported diffuse bloating. Tr. at 440. Dr. Stewart recommended she undergo a colonoscopy. Tr. at 441.

On May 2, 2013, Plaintiff presented to Ms. McCormack for medication refills. Tr. at 447. She reported feeling anxious throughout the day and indicated her anti-anxiety

medication was not adequately addressing her symptoms. *Id.* Ms. McCormack increased Plaintiff's Clonazepam dosage from one milligram twice a day to one milligram three times a day. Tr. at 449.

Dr. Scott submitted a ledger that reflects generally reflects twice monthly visits between April 2011 and May 2013. Tr. at 487–88. The ledger notes Plaintiff's complaints, but contains little detail or objective information and is generally illegible. *See id.*

### b.    Evidence Submitted After ALJ's Decision

Plaintiff underwent a colonoscopy on May 17, 2013, that indicated internal hemorrhoids. Tr. at 80–81. Biopsied cells from Plaintiff's colon were benign. Tr. at 82.

On September 6, 2013, Plaintiff underwent an MRI of her lumbar spine that showed degenerative disc disease at L5-S1 with a small annular tear and a small protrusion slightly eccentric to the left; trace narrowing of the spinal canal without any significant neural foraminal narrowing; and minimal facet degenerative changes of the lower lumbar spine with facet changes minimally contacting the transiting right S1 nerve root, without any gross compression. Tr. at 23–24.

On August 5, 2013, Plaintiff presented to Ms. McCormack with a complaint of worsening pain in her neck and low back. Tr. at 114. Plaintiff demonstrated normal movements without pain during a musculoskeletal examination. Tr. at 115. Ms. McCormack recommended Plaintiff obtain an updated MRI of her lumbosacral spine. Tr. at 114.

Also on September 6, 2013, Plaintiff presented to Alfare Fields, LMSW ("Ms. Fields"), for an initial clinical assessment. Tr. at 25–30. Plaintiff reported symptoms of anxiety and depression. Tr. at 25. She indicated she was very sensitive, had difficulty controlling her temper, and did not like being around others in public. *Id.* Ms. Fields diagnosed Plaintiff with depressive disorder, not otherwise specified ("NOS"), and anxiety disorder, NOS. Tr. at 29.

Plaintiff presented to Dr. Stewart with a complaint of diarrhea on September 18, 2013. Tr. at 124. Dr. Stewart noted blood in Plaintiff's stool, Crohn's disease, and pancreatitis. Tr. at 125.

Plaintiff followed up with Ms. McCormack on September 23, 2013, regarding her MRI results. Tr. at 108. Ms. McCormack indicated the MRI showed mild degenerative disc disease with an annular tear. *Id.* She observed Plaintiff to be tender to palpation over her cervical spine, spinal column, and bilateral lumbar paraspinals and to have reduced ROM due to pain, particularly with extension and left lateral movements. Tr. at 110. Ms. McCormack prescribed Tylenol with Codeine. *Id.*

Plaintiff presented to Dr. Stewart on October 24, 2013, complaining of abdominal distention, bloating, and diarrhea. Tr. at 121. Dr. Stewart instructed Plaintiff to hold off on taking Vytorin. Tr. at 122.

On October 30, 2013, an upper gastrointestinal series and small bowel follow-through test showed no evidence of active Crohn's disease. Tr. at 79.

C.    The Administrative Proceedings

1.    The Administrative Hearing

a.    Plaintiff's Testimony

At the hearing on June 11, 2013, Plaintiff testified that she last worked as an administrative assistant for the Hampton County Literacy Council from 2000 to 2007. Tr. at 57. She stated that her back pain had worsened over the prior year-and-a-half to two-year period. Tr. at 59. She indicated she experienced impaired balance and frequent falls. *Id.* She testified Dr. Scott treated her back and neck with manipulation and massage. Tr. at 59–60. She indicated it was difficult for her bend over her sink to brush her teeth. Tr. at 62. She stated she could only perform household chores for a few minutes at a time. Tr. at 63. She indicated she could take no medication other than Tylenol for pain because of her Crohn's disease. *Id.* She stated she sometimes used a topical agent to reduce her pain and sat in a massage chair multiple times each day. Tr. at 64–65.

Plaintiff testified that her Crohn's disease had improved over the prior two-year period. Tr. at 61. She stated she continued to have occasional flare ups. *Id.* She indicated she had recently been diagnosed with diabetes and took oral medication for it. Tr. at 70. She stated she had experienced recent vision problems and continued to have difficulty focusing despite three adjustments to her prescription for eyeglasses. *Id.*

Plaintiff testified that she could stand in one spot for 20 minutes at a time. Tr. at 65. She indicated she could walk approximately 100 yards. *Id.* She stated she often shifted while sitting and could only sit for 20 to 30 minutes at a time. Tr. at 66. She endorsed sleep disturbance as a result of her pain. *Id.* She testified her neck pain radiated

15

to her arms and caused her to experience headaches. Tr. at 67. Plaintiff stated her headaches occurred once a week and sometimes lasted for more than a day. *Id.* She indicated she had some difficulty lifting a gallon of milk. Tr. at 68. She endorsed some numbness in her hands after doing a lot of writing. *Id.*

Plaintiff testified she lacked medical insurance. Tr. at 68. She indicated she received her medications through a patient-assistance program and visited LCHCS through a sliding-scale payment program. *Id.*

Plaintiff testified that she drove alone to the corner store, but usually traveled with her husband, son, or sister-in-law. Tr. at 71.

### b.    Vocational Expert Testimony

Vocational Expert ("VE") Arthur Schmitt, Ph. D., reviewed the record and testified at the hearing. Tr. at 72–76. The VE categorized Plaintiff's PRW as a truck unloader, *Dictionary of Occupational Titles* ("DOT") number 869.664-014, as heavy with a specific vocational preparation ("SVP") of three and an administrative assistant, *DOT* number 169.167-010, as sedentary per the *DOT* and light as performed with an SVP of seven. Tr. at 73. The ALJ described a hypothetical individual of Plaintiff's vocational profile who could perform medium work, with the following restrictions: should avoid workplace hazards; limited to simple, repetitive tasks; unable to interact with the general public; and can only occasionally interact with coworkers. Tr. at 74. The VE testified that the hypothetical individual could not perform Plaintiff's PRW. *Id.* The ALJ asked whether there were any other jobs in the regional or national economy that the hypothetical person could perform. *Id.* The VE identified medium and unskilled jobs with

an SVP of two as a janitorial cleaner, *DOT* number 381.687-018, with 27,600 positions in South Carolina and 2,090,000 positions in the national economy; a hand packer or packager, *DOT* number 920.587-018, with 9,800 positions in South Carolina and 706,000 positions nationally; and an egg packer, *DOT* number 920.687-134, with 1,982 positions in South Carolina and 360,000 positions nationally. Tr. at 74–75.

Plaintiff's attorney asked the VE to assume that the individual could only stand or walk for up to an hour in an eight-hour day and could only sit for up to three hours in an eight hour day. Tr. at 75. She asked if the individual could perform the jobs identified in response to the ALJ's hypothetical question. *Id.* The VE testified that the individual could not perform the jobs identified or any jobs in the national economy. *Id.* Plaintiff's attorney next asked the VE to assume the individual was limited to occasionally lifting and carrying up to 10 pounds and asked if that limitation would affect the individual's ability to perform the jobs identified in response to the first hypothetical question. *Id.* The VE testified that the limitation would eliminate the hand packager and janitorial jobs, but would not preclude the egg packer position. *Id.* Plaintiff's attorney asked the VE to assume the individual required frequent, unscheduled breaks of up to 15 minutes per hour throughout the workday. Tr. at 75–76. She asked if an individual with such a limitation would be able to perform the jobs identified in response to the ALJ's hypothetical. Tr. at 76. The VE testified the individual would be unable to perform those or any other jobs in the national economy. *Id.* Finally, Plaintiff's attorney asked the VE to assume the individual would be absent from work at least three times per month. *Id.* The VE

indicated the individual would be unable to perform the identified jobs or any other jobs in the national economy. *Id.*

### 2. The ALJ's Findings

In her decision dated June 28, 2013, the ALJ made the following findings of fact and conclusions of law:

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2012.
2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of April 27, 2011 through her date last insured of December 31, 2012.
3. Through the date last insured, the claimant had the following severe impairments: Crohn's disease, degenerative disc disease, and anxiety (20 CFR 404.1520(c)).
4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except the claimant can only perform simple, routine, repetitive tasks with no interaction with the public, only occasional interaction with coworkers, and avoiding all workplace hazards.
6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).
7. The claimant was born on November 10, 1956 and was 56 years old, which is defined as an individual closely approaching advanced age,[1] on the date

---

[1] The undersigned notes that the ALJ erred in classifying Plaintiff as "closely approaching advanced age" on her date last insured ("DLI"). The Medical-Vocational Guidelines define advanced age as "55 and over." 20 C.F.R., Part 404, Subpt. P, App'x. 2, § 201.00(d). Because Plaintiff was 56 years old on her DLI, she was fell into the "advanced age" category. However, Plaintiff raises no issue regarding the ALJ's misclassification, and the undersigned finds this to be harmless error, as it did not influence the ALJ's finding on the issue of disability. *See Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir. 1994) (affirming denial of benefits where the ALJ erred in evaluating a claimant's pain because "he would have reached the same result notwithstanding his initial error").

last insured. The claimant subsequently changed age category to advanced age (20 CFR 404.1563).

8.    The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.   Through the dated [sic] last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

11.   The claimant was not under a disability, as defined in the Social Security Act, at any time from April 27, 2011, the alleged onset date, through December 31, 2012, the date last insured (20 CFR 404.1520(g)).

Tr. at 39–47.

II.    Discussion

Plaintiff alleges the Commissioner erred for the following reasons:

1)    the ALJ failed to follow the treating physician rule;

2)    the ALJ did not resolve a conflict in the vocational evidence;

3)    the ALJ failed to apply Grid Rule 202.06; and

4)    the ALJ's consideration of the evidence of Plaintiff's multiple impairments was not supported by substantial evidence.

The Commissioner counters that substantial evidence supports the ALJ's findings and that the ALJ committed no legal error in her decision.

A.      Legal Framework

1.      The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). Section 423(d)(1)(A) defines disability as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims). An examiner must consider the following:  (1) whether the claimant is engaged in substantial gainful activity; (2) whether she has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[2] (4) whether such

---

[2]  The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, she will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that her impairments match several specific criteria or are "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen*

impairment prevents claimant from performing PRW;[3] and (5) whether the impairment prevents her from doing substantial gainful employment. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if she can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82-62 (1982). The claimant bears the burden of establishing her inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v.*

---

*v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[3] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

*Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that she is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

2.    The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [] made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that her conclusion is rational. *See Vitek*, 438 F.2d at 1157–58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is

substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

B.    Analysis

1.    Treating Physician Rule

Plaintiff argues the ALJ failed to cite persuasive contradictory evidence to support her decision to give little weight to the treating physician's opinion. [ECF No. 10 at 5]. The Commissioner maintains that Dr. Scott's opinion was not entitled to the deference accorded to a treating physician's opinion because Dr. Scott, a chiropractor, was not an acceptable medical source. [ECF No. 12 at 12–13]. She contends the ALJ adequately considered and rejected Dr. Scott's opinion as being inconsistent with the other evidence of record. *Id.* at 13.

ALJs must carefully consider medical opinions on all issues. SSR 96-5p. The Social Security Administration's ("SSA's") rulings and regulations define "medical opinions" as statements from acceptable medical sources that reflect judgments about the nature and severity of an individual's impairments and include information regarding the individual's symptoms, diagnosis and prognosis, what she can still do despite her impairments, and her physical or mental restrictions. SSR 96-5p, citing 20 C.F.R. § 404.1527(a)(2). Acceptable medical sources include licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists. SSR 06-3p; *see* 20 C.F.R. § 404.1513(a).

The treating physician rule generally provides that an acceptable medical source's opinion should be accorded controlling weight if it is "well-supported and not inconsistent with the other substantial evidence in the case record." SSR 96-2p; *see also Mastro v. Apfel*, 270 F.3d 171 (4th Cir. 1001); *Hunter v. Sullivan*, 993 F.2d 31 (4th Cir. 1993); 20 C.F.R. § 404.1527(c)(2). If an ALJ declines to accord controlling weight to a treating physician's opinion, all medical opinions of record must be evaluated based on the criteria set forth in 20 C.F.R. § 404.1527(c), which include (1) the examining relationship between the claimant and the medical provider who rendered the opinion; (2) the treatment relationship between the claimant and the medical provider who rendered the opinion, including the length of the treatment relationship and frequency of treatment and the nature and extent of the treatment relationship; (3) the supportability of the medical provider's opinion in his or her own treatment records; (4) the consistency of the medical opinion with other evidence in the record; and (5) the specialization of the medical provider offering the opinion. *Johnson*, 434 F.3d at 654; 20 C.F.R. § 404.1527(c).

"Other sources" are defined as individuals other than acceptable medical sources and include medical providers, such as nurse practitioners, physician assistants, licensed clinical social workers, naturopaths, chiropractors, audiologists, and therapists, as well as non-medical sources, such as educational personnel, social welfare agency personnel, rehabilitation counselors, spouses, parents, other relatives, friends, neighbors, clergy, and employers. 20 C.F.R. § 404.1513(d). Opinions from "other sources" are not medical opinions. SSR 06-3p; *see also Lee v. Sullivan*, 945 F.2d 687, 691 (4th Cir. 1991) ("Dr.

Sandell is a chiropractor. The Regulations provide that, as such, he does not qualify as an 'acceptable medical source' to make a 'medical assessment' on a Social Security claimant's 'ability to do work-related activities such as sitting, standing, moving about, lifting, carrying, handling objects, hearing, speaking and traveling.' *See* 20 C.F.R. § 416.913. At best, Dr. Sandell's assessment can qualify only as a layman's opinion.").

While the factors in 20 C.F.R. § 404.1527(c) do not have to be explicitly considered when evaluating the opinions of other sources, they represent basic principles for the consideration of all opinion evidence. *Id.* "The evaluation of an opinion from a medical source who is not an 'acceptable medical source' depends on the particular facts in each case," and should be based on "consideration of the probative value of the opinions and a weighing of all evidence in that particular case." *Id.*

The ALJ considered Dr. Scott's findings and opinion. Tr. at 42, 43. She accorded little weight to Dr. Scott's opinion, and pointed out that, as a chiropractor, Dr. Scott was not an "acceptable medical source" pursuant to 20 C.F.R. § 404.1513(a). Tr. at 43. The ALJ indicated that she gave Dr. Scott's opinion "limited weight as it is inconsistent with the claimant's presentation upon routine examination and the findings of the consultative examiners." *Id.*

The undersigned recommends the court find the ALJ adequately considered Dr. Scott's opinion in accordance with the requirements of SSR 06-3p. The treating physician rule was inapplicable to Dr. Scott's opinion because Dr. Scott was a chiropractor, as opposed to an acceptable medical source. *See* 20 C.F.R. § 404.1513(d); SSR 06-3p; *see also Lee*, 945 F.2d at 691 (4th Cir. 1991). The ALJ was also not required to assess Dr.

Scott's opinion based upon a stringent weighing of the factors in 20 C.F.R. § 404.1527(c) because Dr. Scott's opinion was not a medical opinion within the meaning set forth in the Regulations. *See* 20 C.F.R. § 404.1513(a); 20 C.F.R. § 404.1527(a)(2); SSR 96-5p; SSR 06-3p. A review of the ALJ's decision reveals that she considered Dr. Scott's opinion, but declined to give it significant weight because Dr. Scott was not an acceptable medical source and because her opinion was inconsistent with the records of Plaintiff's treating physicians and physician assistants and the examination reports and opinions of the consultative physicians. *See* Tr. at 43. Thus, it appears the ALJ considered the probative value of Dr. Scott's opinion, but determined that the balance of the evidence weighed against its acceptance. The ALJ's determination was supported by a record that revealed mostly normal and benign findings during routine and consultative examinations and contained medical opinions that contradicted Dr. Scott's opinion. *See* Tr. at 115, 158–60, 173–75, 377, 380, 384, 388, 398, 402, 422, 425, 428, 437–38, 457, 466. In light of the foregoing, the undersigned recommends the court find the ALJ adequately considered and appropriately gave little weight to Dr. Scott's opinion.

2.    Ability to Perform Medium Work and Inability to Perform PRW

Plaintiff argues the ALJ's finding that she could perform medium work was inconsistent with the VE's testimony and the ALJ's finding that Plaintiff could not perform her PRW that was performed at the light exertional level. [ECF No. 10 at 6]. The Commissioner argues that the ALJ's finding and the VE's testimony that Plaintiff could not perform her PRW was not inconsistent with a finding that she could perform medium work because their conclusions were based upon a finding that Plaintiff's PRW was too

highly skilled—as opposed to a finding that Plaintiff could not meet the physical demands of the job. [ECF No. 12 at 14]. She points out that the RFC assessed by the ALJ limited Plaintiff to unskilled work and that her PRW as an administrative assistant was highly skilled with an SVP of seven. *Id.* at 14–15.

In determining at step four of the sequential evaluation process whether an individual can return to PRW, the ALJ must consider whether the individual has the RFC to "meet the physical and mental demands of jobs he has performed in the past (either the specific job he performed or the same kind of work as it is customarily performed throughout the economy)." SSR 82-62. If the individual's RFC allows for performance of PRW, the individual is not disabled under the Regulations. 20 C.F.R. § 404.1520(a)(4)(iv).

If the individual's RFC does not allow for performance of PRW, the analysis proceeds to a fifth step where the burden shifts to the Commissioner to show that the individual is capable of performing jobs that exist in significant numbers in the economy. *Walls*, 296 F.3d at 290, citing *Powers v. Apfel*, 207 F.3d 431, 436 (7th Cir. 2000). The ALJ must consider the claimant's RFC, age, education, and work experience to determine if she can adjust to other work. 20 CFR §§ 404.1520(a)(4)(v). If the ALJ determines that the claimant can adjust to other work, he will find that she is not disabled. *Id.*

During the hearing, the VE categorized Plaintiff's PRW as a truck unloader as heavy with a SVP of three and an administrative assistant as sedentary per the *DOT* and light as performed with an SVP of seven. Tr. at 73. The ALJ described a hypothetical individual of Plaintiff's vocational profile who could perform medium work, with the

following restrictions: should avoid workplace hazards; limited to simple, repetitive tasks; unable to interact with the general public; and can only occasionally interact with coworkers. Tr. at 74. The VE testified that the hypothetical individual could not perform Plaintiff's PRW, but could perform work occurring in significant numbers in the regional and national economy as a janitorial cleaner, a hand packer, and an egg packer. Tr. at 74–75.

The ALJ assessed Plaintiff as having the RFC to perform work consistent with that described in the hypothetical question to the VE. *Compare* 41, *with* Tr. at 74.  She found that Plaintiff was unable to perform her PRW based on the VE's testimony that she "could not perform either job" given the assessed RFC. Tr. at 45. The ALJ noted that the Medical-Vocational Rules pertaining to medium work were not directly applicable because Plaintiff had additional limitations that eroded the occupational base and explained that she relied upon the VE's testimony to determine the extent to which Plaintiff's limitations eroded the unskilled medium job base. Tr. at 47. She determined, based on the VE's testimony, that Plaintiff was capable of performing jobs existing in significant numbers in the economy as a janitor, a hand packer, and an egg packer, which were all medium, unskilled jobs. Tr. at 45–46.

Pursuant to SSR 82-62, the ALJ was required to consider whether Plaintiff was capable of meeting the physical and mental demands of her PRW. Thus, in making a determination at step four, the ALJ had to consider both the exertional and skill levels of Plaintiff's PRW. According to the VE's testimony,  Plaintiff's work as an administrative assistant required a skill level of seven and was light in exertional level as Plaintiff

performed it, but sedentary in exertional level as described in the *DOT*. *Id.* The ALJ found Plaintiff's RFC allowed her to perform work at the medium exertional level, but that she could only perform simple, routine, repetitive tasks. Tr. at 41. The RFC assessed by the ALJ was consistent with the performance of unskilled work. *See* 20 C.F.R. § 404.1568 ("Unskilled work is work which needs little or no judgments to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength."). Based on the RFC for medium, unskilled work, the VE identified and the ALJ found Plaintiff could perform jobs with an SVP of two. *See* Tr. at 46, 74–75; *see also* SSR 00-4p ("Using the skill level definitions in 20 CFR 404.1568 and 416.968, unskilled work corresponds to an SVP of 1–2; semi-skilled work corresponds to an SVP of 3–4; and skilled work corresponds to an SVP of 5–9 in the *DOT*."). The VE testified and the ALJ found that the limitation to jobs with an SVP of two eliminated Plaintiff's ability to perform her PRW as an administrative assistant, which had an SVP of seven. *See* Tr. at 45, 73. Thus, even though the ALJ found the exertional demands of Plaintiff's PRW as an administrative assistant were less than the exertional limitation assessed in the RFC, she found Plaintiff could not perform her PRW because the skill level of Plaintiff's PRW exceeded her RFC. In reaching this conclusion, the ALJ adequately considered both the physical and mental demands of Plaintiff's PRW. In light of the foregoing, the undersigned recommends the court find no conflict in the ALJ's assessment of Plaintiff's ability to perform PRW and other jobs existing in significant numbers in the economy.

3.    Grid Rule 202.06

Plaintiff argues the record suggested she was limited to no more than light work and that Grid Rule 202.06 directed a finding that she was disabled. [ECF No. 10 at 6]. The Commissioner argues the RFC assessed by the ALJ for medium work was supported by the record and that Grid Rule 202.06 was not applicable because the record did not suggest Plaintiff was limited to light work. [ECF No. 12 at 15–16].

Rule 202.06 of the Medical-Vocational Guidelines directs a finding that an individual is disabled if the following conditions are met:

(1)    the individual must have a maximum sustained work capability limited to light work as a result of severe medically-determinable impairments;

(2)    the individual must be of advanced age;

(3)    the individual must be a high school graduate or more, but must not have attained education that allows for direct entry into skilled work; and

(4)    the individual must have a history of skilled or semiskilled work, but cannot have skills that are transferable to light work.

20 C.F.R., Part 404, Subpt. P, App'x. 2, § 202.06.

At the time of the hearing, Plaintiff was 56 years old, which placed her in the "advanced age" category. *See* Tr. at 562; *see also* 20 C.F.R., Part 404, Subpt. P, App'x. 2, § 201.00(d). She completed high school, but had no education that provided for direct entry into skilled work. *See id.* Her PRW was semiskilled and skilled, but she had no transferable skills to light work because the RFC assessed by the ALJ limited her to simple, routine, repetitive tasks. *See* Tr. at 41, 73. However, Plaintiff failed to meet the first criterion for application of Grid Rule 202.06 based on the ALJ's finding that she had

a maximum RFC for medium work. *Compare* Tr. at 41, *with* 20 C.F.R., Part 404, Subpt. P, App'x. 2, § 202.06. Because Plaintiff met only three of the four criteria under Grid Rule 202.06, the ALJ did not err in failing to apply the rule to direct a finding that Plaintiff was disabled.

Although Plaintiff argues the ALJ should have found she was limited to light work, she points only to the fact that the ALJ found she could not perform the PRW that she had performed at the light exertional level. *See* ECF No. 10 at 6. As discussed above, the ALJ found Plaintiff could not perform her PRW based on its skill level, not its exertional level.

The undersigned's review of the record reveals no significant evidence to support a finding that Plaintiff was limited to light work. Both Plaintiff's testimony and Dr. Scott's opinion limited her to less than sedentary work. *See* Tr. at 56–72, 414–19. However, the ALJ found that Plaintiff's testimony was not entirely credible and gave little weight to Dr. Scott's opinion. *See* Tr. at 43, 44. The state agency physicians found Plaintiff was limited to medium work. *See* Tr. at 158–60, 173–75. None of Plaintiff's treating physicians or the examining physicians suggested Plaintiff had any particular restrictions. *See* 369–92, 393–406, 422–25, 426–31, 435–39, 440–46, 447–86. In light of the foregoing, the undersigned recommends a finding that the ALJ did not err in declining to assess Plaintiff as limited to light work or in determining Grid Rule 202.06 to be inapplicable.

4.    ALJ's Consideration of the Evidence

Plaintiff argues that the ALJ selectively chose evidence that suggested she had a greater level of functioning and ignored the evidence that was consistent with her complaints. [ECF No. 10 at 5]. She maintains the ALJ's decision overestimated her functioning and was not supported by substantial evidence. *Id.*

The Commissioner argues that substantial evidence supports the ALJ's analysis of Plaintiff's impairments. [ECF No. 12 at 10]. She maintains that Plaintiff failed to develop this issue and that it should be deemed abandoned. *Id.* In the alternative, she contends that the ALJ properly considered the medical evidence, which included objective findings that did not support Plaintiff's allegations. *Id.* at 10–12.

In determining whether the ALJ's decision is supported by substantial evidence, the court "can do no more than require that the ALJ carefully consider the evidence, make reasonable and supportable choices and explain his conclusions." *Wilson v. Commissioner of Social Security Administration*, No. 1:13-2223-TLW, 2014 WL 7043674, at *16 (D.S.C. Dec. 12, 2014), citing *McCall v. Apfel*, 27 F.Supp.2d 723, 731 (S.D.W.Va. 1999). The ALJ, as factfinder, "is charged with reconciling inconsistencies in the evidence" and, "if his findings are supported by substantial evidence, his decision must be upheld." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974), citing *Underwood v. Robicoff*, 298 F.2d 850 (4th Cir. 1962). However, the courts "cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Id.*, citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474 (1951); *Thomas v. Celebrezze*, 331 F.2d 541 (4th Cir. 1964).

The ALJ must consider all relevant evidence of record in determining whether a claimant is disabled. 20 C.F.R. §§ 404.1527(b). Although "the Commissioner's decision must 'contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based,' 42 U.S.C. § 405(b)(1), 'there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision.'" *Reid*, 769 F.3d 861, 865 (4th Cir. 2014), *citing Dyer v. Barnhardt*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam); *Russell v. Chater*, No. 94-2371, 1995 WL 417576, at *3 (4th Cir. July 7, 1995) (per curiam) (explaining that this Court has not "established an inflexible rule requiring an exhaustive point-by-point discussion in all cases"). In *Reid*, the court found that the Commissioner's decision satisfied the statutory requirements because "[t]he Commissioner, through the ALJ and Appeals Council, stated that the whole record was considered, and, absent evidence to the contrary, we take her at her word." 769 F.3d at 865, *citing Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005) ("Our general practice, which we see no reason to depart from here, is to take a lower tribunal at its word when it declares that it has considered a matter."). The court further explained that the ALJ's decision specifically referenced the time period the plaintiff claimed the ALJ ignored and that the plaintiff "failed to point to any specific piece of evidence not considered by the Commissioner that might have changed the outcome of his disability claim." *Id.*

In the instant case, the ALJ specified that she considered the entire record. *See* Tr. at 37 ("After consideration of all the evidence . . ."), 39 ("After careful consideration of

33

the entire record, the undersigned makes the following findings . . .”), 41 (“After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform medium work . . . . In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSRs 96-4p and 96-7p. The undersigned has also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.”).

The ALJ found that Plaintiff’s severe impairments included Crohn’s disease, degenerative disc disease, and anxiety. Tr. at 39. She noted that Plaintiff also had medically-determinable impairments of pancreatitis, hypothyroidism, hyperlipidemia, gastroesophageal reflux disease (“GERD”), and diabetes mellitus, but noted that the record included no complaints related to the additional impairments after Plaintiff’s alleged onset date and found that the impairments were well-managed with Plaintiff’s medical treatment regimen and did not affect her ability to perform work-related activities. *Id.* The ALJ acknowledged Plaintiff’s complaint of vision problems, but found that the record did not support a medically-determinable vision problem. *Id.* The ALJ found that none of Plaintiff’s impairments met or equaled the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, App’x. 1. Tr. at 40.

The ALJ assessed Plaintiff to have had the RFC, through her DLI of December 31, 2012, to perform medium work involving simple, routine, repetitive tasks with no

interaction with the public, only occasional interaction with coworkers, and no exposure to workplace hazards. Tr. at 41. In assessing this RFC, the ALJ explicitly considered Plaintiff's statements and testimony, the MRI reports, and examination records from Dr. Scott, Dr. Steinert, Dr. Kumar, Plaintiff's primary care physicians, and Plaintiff's gastroenterologists. *See* Tr. at 41–44. She concluded that the assessed RFC was "supported by the findings of the consultative examiners, the treatment records of claimant's primary care provider and treating physician, and the findings in the previous decision of this court." Tr. at 45.

After having assessed Plaintiff's RFC, the ALJ concluded, based on the VE's testimony, that Plaintiff was incapable of performing her PRW, but retained the ability to perform jobs that existed in significant numbers in the economy. Tr. at 45–46. Therefore, she concluded Plaintiff was not disabled. Tr. at 46.

Here, the ALJ specified that she considered the entire record and based her decision on a comprehensive evaluation of the evidence. *See* Tr. at 37, 39, 41. Plaintiff cites no particular inconsistencies or omissions by the ALJ in her consideration of the evidence. In the absence of evidence to the contrary to refute the ALJ's assertions that she considered the entire record, "we take her at her word." *Reid*, 769 F.3d at 865. The undersigned's review of the record reveals that the ALJ methodically followed the five-step evaluation process and considered the relevant medical evidence, the opinions of record, Plaintiff's complaints, and the vocational testimony. *See* Tr. at 39–47. Although the ALJ did not cite every piece of evidence in the record, her decision reflects consideration of evidence that both supported and refuted Plaintiff's allegations. *See id.*

In comparing the ALJ's decision to the evidence of record, it appears that the ALJ reconciled the evidence to reach a rational conclusion. *See Oppenheim*, 495 F.2d at 397. Based on the record before the court, and in the absence of any specific allegations of error by Plaintiff, the undersigned recommends a finding that the ALJ adequately considered the evidence, made reasonable and supportable choices, explained her conclusions, and reached a decision that was supported by substantial evidence. *See Wilson*, 2014 WL 7043674, at *16; *McCall*, 27 F. Supp. 2d at 731; *see also Oppenheim*, 495 F.2d at 397.

III.    Conclusion and Recommendation

The court's function is not to substitute its own judgment for that of the Commissioner, but to determine whether her decision is supported as a matter of fact and law. Based on the foregoing, the undersigned recommends the Commissioner's decision be affirmed.

IT IS SO RECOMMENDED.

Shiva V. Hodges

November 10, 2015                         Shiva V. Hodges
Columbia, South Carolina                  United States Magistrate Judge

**The parties are directed to note the important information in the attached**
**"Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).